Brown, J.
This is an action brought to recover damages against the defendant, an assessor of the town of Oxford, for illegally assessing the plaintiff for personal property in that town, he being at the time resident in the county of Oswego. All the questions involved in the case have been decided in The People v. Supervisors of Chenango County (1 Kern., 563), except one, and that is, the defence of the statute of limitations. The assessment was made on the 24th of July, 1846, and the action commenced on the 24th day of July, 1852. Counting one day (the day the act complained of was done) exclusive and the other inclusive, the action was commenced within the period of six years. I entertain no doubt but that the day on which the assessment roll was signed, certified and delivered to the supervisor was the completion of the assessment which forms the ground of the action.
The judgment should be affirmed.
Denio, C. J.
The act relating to the assessment of taxes requires that every person shall be assessed in the town or ward where he resides when the assessment is made, for all personal estate owned by him. (1 R. S., 389, § 5.) As the plaintiff resided in Oxford, during a portion of the year 1846, and changed his residence to Oswego while the proceedings to make out the assessment for that year were going on, it becomes necessary to ascertain when, in the course of these proceedings, the assessment shall be said to be made. Between the first days of May and July, in each year, the assessors are to proceed “ to ascertain, by diligent inquiry, the names of the taxable inhabitants ” in their towns or wards; and for this purpose they are authorized to divide the town into as many convenient districts as there are assessors. (Id., 390, §§ 7, 8.) They are then allowed until the first day of August to complete and copy the assessment roll, after which they are to give notice that on the third Tuesday in August they will review their assessment, and that parties considering themselves aggrieved may appear *319 before them and make their complaints. Finally, they are to deliver the corrected roll to the supervisors by the first day of September following. (Id., 393, 394, §§ 19, 20, 27.) The period for ascertaining the names of the tax paying persons, it is thus seen, includes the months of May and June, and is limited to those months, during which period, namely, on the twenty-fifth of May, the plaintiff changed his residence; and, it must be added, if the fact is of any importance, an account was taken by the defendant of his taxable property during the period assigned to the inquiry and before his change of residence. But this was not, the making of the assessment. The amount then put down as the value of the plaintiff’s taxable property, was liable to be changed by the three assessors, when assembled to prepare the roll; and it was perfectly competent to leave his name entirely off the roll when it came to be completed. If the plaintiff, instead of removing from Oxford the latter part of May, had moved into the town on that day, and remained there until the roll was completed, there can be no doubt but that he would have been liable to be assessed there. He did go. to Oswego in May, so that in June he became subject to the perquisitions of the assessors of that town , and he was assessed there, and compelled to pay taxes upon the same property for which he was taxed in Oxford. The fact that he was taxed in Oswego is of no legal consequence in this action. It is, however, a circumstance well calculated to illustrate the incoherency which the defendant’s construction of the statute would produce. It may be safely assumed that the law does not intend to tax the property of the citizen more than once in the same year, and that no increased burthen is designed to be imposed on a person on account of a lawful change of "residence at any time in the year. The defendant argues that the assessment is made when the assessor, within whose district the tax payer is found, takes down his name and an account of his taxable property. But this may be done on any day in May or *320 June; so that if he has two or more places of residence in different towns, during these two months, ho may be assessed and taxed once in each town, and each of the assessments will be entirely legal. This, then, cannot be the true construction, for it leads to a manifest absurdity. Evidently there must be some day, in the course of the proceeding, on which the assessment may be said to be made. The fixing of this day cannot depend upon the degree of diligence with which the assessors perform their duties; for in that case it would be different in different towns, and there would be a liability to a double assessment. In my opinion the assessment should be considered as made at the expiration of the time limited for making the inquiry, namely, on the first day of July. If there is any change, of residence or the ownership of the property, after that day, it does no affect the assessment roll. The inquiries are then com pleted. Any changes which the assessors are authorized to make after that time, are such as may be required to correct mistakes. No earlier day can be assumed, because what is done by one or all the assessors prior to the first of July is inchoate and preparatory, and liable to be altered according to their final judgment upon the matter. When the statute speaks of the time “when the assessment is made’.’ it refers to the binding and conclusive act which designates the tax payers-and the amount of taxable property. If I am correct, in what has been said, it follows that the time, referred to in the statute, is the first day of July. It cannot be an earlier or a later day without involving incongruities which •we cannot suppose the legislature would have permitted to exist. We arrived at the same conclusion when this tax was before the court in another aspect; and I should not have thought it necessary to add a word to what was then said, were it not that the case was decided upon another point, namely, the propriety of the remedy by mandamus against the board of supervisors; and what is contained in *321 the opinion as to the present question was not absolutely necessary to the judgment which was given. ( The People v. The Supervisors of Chenango County, 1 Kern., 573.)
The plaintiff, therefore, was not subject to the jurisdiction of the assessors. In placing his name on the roll, and adding thereto an amount as the value of his personal property, they acted without authority. As the board of supervisors was obliged by law to annex a tax to the name of every person assessed upon the roll, and to issue a warrant for the collection of the tax, the unauthorized act of the assessors was the means by which the property of the plaintiff was procured to be sold. They are, therefore, responsible to the plaintiff for the damages which ensued. It was not, in the view of the law, the case of an error of judgment. It is a salutary rule, though in some cases, and perhaps in the one before us, it may operate harshly, that a subordinate officer is bound to see that he acts within the scope of the authority legally committed to him. The principle is too well settled to require a reference to authority; but its application to the case of the assessment of a person not liable to taxation in the town or district in which the assessment is made has often been declared in the courts of this and other states. (Suydam v. Keys, 13 John., 444; Prosser v. Secor, 5 Barb., 607; People v. The Supervisors of Chenango County, supra; Freeman v. Kenney, 15 Pick., 44; Lyman v. Fiske, 17 id.B 231.)
The action, was not barred by the statute of limitations. The cause of action arose when the plaintiff’s property was taken in consequence of the illegal assessment, which was within six years before the suit was commenced. The assessment, which was wholly void, could not have prejudiced the plaintiff if it had not been made effectual to his injury by the acts which followed. (Merritt v. Read, 5 Denio, 352; Roberts v. Read, 16 East., 215.)
The judgment of the Supreme Court should be affirmed.
*322 All the judges concurred in affirming the judgment, except Shankland, J., who dissented.
Judgment affirmed.